UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAGHIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUN-MAID GROWERS OF CALIFORNIA<br><br>Defendant. | Case No. CV 17-05013-AB (PJWx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY AND PLAINTIFF'S MOTION TO STRIKE** |

## I.    INTRODUCTION

Pending before the Court are two motions: (1) Defendant Sun-Maid Growers of California's ("Defendant") Motion to Dismiss or Stay Plaintiff Jonathan Saghian's ("Plaintiff") Complaint (Dkt. No. 16-1 ("Mot.")), and (2) Plaintiff's Motion to Strike Defendant's Reply In Support of Motion to Dismiss (Dkt. No. 27).  The Court deems these matters appropriate for resolution without oral argument and vacates the hearing scheduled for December 15, 2017.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, Defendant's Motion to Dismiss or Stay and Plaintiff's Motion to Strike are **DENIED**.

1.

## II. BACKGROUND

### A. Factual Background.

"In 2016 and 2017, [Plaintiff] purchased Sun-Maid Natural California Raisins [('Sun-Maid Raisins' or 'Product')] many times from stores in Los Angeles, California, including Ralph's and Target." (Dkt. No. 1 ("Compl.") ¶ 11.) According to Plaintiff, he purchased Sun-Maid Raisins after "reasonably relying on the Defendant's representation that the Product has 'No Sugar Added' and reasonably believing that the Product was less sugared in comparison to comparable competitor products not bearing the same representation." (Compl. ¶ 11.) "Specifically, before purchasing the Product, [Plaintiff] also saw that competitor brand(s) of raisins at each store did not contain a 'No Sugar Added' representation [on] the labeling, causing him to believe that those products did in fact contain added sugar and that Sun-Maid Natural California Raisins were less sugary than comparable competitor products." (Compl. ¶ 11.)

According to Plaintiff, he "would not have purchased the Product, would not have purchased the Product as often, or would have paid significantly less for the Product had he known that the 'No Sugar Added' representation on the Product was unlawful and deceptive." (Compl. ¶ 11.) Plaintiff alleges that he "suffered injury in fact and lost money as a result of Defendant's improper, misleading, unfair, and fraudulent practices." (Compl. ¶ 11.)

### B. Procedural Background.

Plaintiff filed his Class Action Complaint in this Court on July 7, 2017, alleging seven claims: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq.; (2) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, et seq.; (3) violation of California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, et seq.; (4) common law fraud; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) quasi contract/unjust enrichment/restitution.

1  ("Compl.")

2  On September 18, 2017, Defendant filed its Motion to Dismiss or Stay
3  Plaintiff's Complaint. (Mot.) Plaintiff opposed the Motion to Dismiss or Stay on
4  October 16, 2017. (Dkt. No. 22 ("Opp'n").) Defendant replied on November 13,
5  2017. (Dkt. No. 25 ("Reply").)

6  On November 16, 2017, Plaintiff filed his Motion to Strike Defendant's Reply
7  in Support of Motion to Dismiss. (Dkt. No. 27.) On November 24, 2017, Defendant
8  opposed Plaintiff's Motion to Strike. (Dkt. No. 28.) On December 1, 2017, Plaintiff
9  replied. (Dkt. No. 29.)

10 **III. LEGAL STANDARD**

11  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
12  statement of the claim showing that the pleader is entitled to relief. Specific facts are
13  not necessary; the statement need only give the defendant fair notice of what the . . .
14  claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93
15  (2007) (ellipsis in original; internal quotation marks omitted). But Rule 8 "requires
16  more than labels and conclusions, and a formulaic recitation of the elements of a cause
17  of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

18  Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim upon
19  which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a
20  judge must accept as true all of the factual allegations contained in the complaint."
21  *Erickson*, 551 U.S. at 94. However, allegations contradicted by matters properly
22  subject to judicial notice or by exhibit need not be accepted as true, *Sprewell v.*
23  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); and a court is "not bound
24  to accept as true a legal conclusion couched as a factual allegation[,]" *Ashcroft v.*
25  *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a
26  complaint suffice if it tenders naked assertion[s] devoid of further factual
27  enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original; citation and internal
28  quotation marks omitted). A complaint must "state a claim to relief that is plausible

1 on its face." *Twombly*, 550 U.S. at 570.  This means that the complaint must plead
2 "factual content that allows the court to draw the reasonable inference that the
3 defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The
4 plausibility standard is not akin to a 'probability requirement,' but it asks for more
5 than a sheer possibility that a defendant has acted unlawfully." *Id.*

6 Ruling on a motion to dismiss will be "a context-specific task that requires the
7 reviewing court to draw on its judicial experience and common sense.  But where the
8 well-pleaded facts do not permit the court to infer more than the mere possibility of
9 misconduct, the complaint has alleged—but it has not show[n]—that the pleader is
10 entitled to relief." *Id.* at 679 (alteration in original; internal quotation marks and
11 citation omitted).  The court must discount conclusory statements, which are not
12 presumed to be true; and then, assuming any factual allegations are true, the court
13 must determine "whether they plausibly give rise to entitlement to relief." *See id.*;
14 *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  A court should
15 consider the contents of the complaint and its attached exhibits, documents
16 incorporated into the complaint by reference, and matters properly subject to judicial
17 notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007);
18 *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other*
19 *grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.
20 2002).

**IV. REQUEST FOR JUDICIAL NOTICE**

22 When deciding a motion to dismiss, a court typically does not look beyond the
23 complaint in order to avoid converting a motion to dismiss into a motion for summary
24 judgment.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.
25 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
26 501 U.S. 104 (1991).  But a court may properly consider material subject to judicial
27 notice under Federal Rule of Evidence 201.  *See United States v. Ritchie*, 342 F.3d
28 903, 908 (9th Cir. 2003); *Lee*, 250 F.3d at 688–89.  Federal Rule of Evidence 201

provides that the Court may take judicial notice of "a fact that is not subject to reasonable dispute" because either (1) "it is generally known within the trial court's territorial jurisdiction," or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice include "public records, [such as] the 'records and reports of administrative bodies.'" *Ritchie*, 342 F.3d at 909. A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Defendant requests that the Court take judicial notice of copies of three different letters: (1) a letter sent from Maia Kats, Litigation Director, and Laura MacCleery, Director of Regulatory Affairs at the Center for Science in the Public Interest, to Dr. Susan Mayne, the Director of Food and Safety and Applied Nutrition at the Food and Drug Administration ("FDA") (Dkt. No. 16-3, Declaration of Jason D. Strabo ("Strabo Decl."), Ex. A); (2) a letter from Carol Fresinger, the Executive Director at the Juice Products Association, to Dr. Susan Mayne (Strabo Decl., Ex. B); and (3) a letter from Dr. Douglas Balentine, the Director of the Office of Nutrition and Food Labeling at the Center for Food Safety and Applied Nutrition at the FDA, to Maia Kats and Laura MacCleery (*see* Dkt. No. 20-1, Declaration of Christopher M. Lahiff ("Lahiff Decl."), Ex. A). (Dkt. No. 21 ("Am. RJN").)[1]

Because it is appropriate to take judicial notice of "matters of public record" and because courts have held it appropriate to take judicial notice of letters from public interest groups to the FDA, as well as letters from the FDA, the Court takes

---

[1] Defendant filed its original Request for Judicial Notice on September 18, 2017, along with its Motion to Dismiss. (*See* Dkt. No. 16-2.) Defendant filed its Amended Request for Judicial Notice on October 11, 2017. (*See* Dkt. No. 21.) Thus, the Court examines those documents that Defendant discusses in its Amended Request for Judicial Notice. (Dkt. No. 21 ("As amended, Sun-Maid requests that the Court take judicial notice of the following" three letters.).)

5.

judicial notice of the letters. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D. Cal. 2015); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-cv-01586-JST, 2017 WL 4023152, at *2 (N.D. Cal. May 26, 2017). The Court does not, however, take judicial notice of the letters for the truth of the matters asserted therein. *See In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012) (refusing to take judicial notice of documents received pursuant to a FOIA request for the truth of the matters asserted therein in the context of a motion to dismiss). The Court does not take judicial notice of the veracity of the arguments or disputed facts asserted in the letters, but takes note of the existence of the representations made within the letters. *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) ("A court can only take judicial notice of the existence of those matters of public record (the existence of a motion or of representations having been made therein) but not of the veracity of the arguments and disputed facts contained therein.") (emphasis omitted).

## V. DISCUSSION[2]

### A. Whether Plaintiff States a Claim Based on a Violation of FDA Regulations Governing "No Sugar Added" Claims.

The FDA adopted regulations, pursuant to the Food, Drug, and Cosmetic Act, requiring that the "No Added Sugar," "Without Added Sugar," or "No Sugar Added" labels only be used when, among other requirements: "The Food that it resembles and for which it substitutes normally contains added sugars." 21 C.F.R. § 101.60(c)(2)(iv). Plaintiff alleges Defendant's use of the "No Sugar Added" label

---

[2] In its Motion to Dismiss, Defendant argues that Plaintiff lacks Article III standing to pursue injunctive relief. (Mot. at 12–14.) In its Reply, in light of recent Ninth Circuit precedent, Defendant "withdraws its argument that Plaintiff's request for injunctive relief should be stricken because Plaintiff lacks standing to seek injunctive relief under Article III of the United States Constitution." (Reply at 1 n.3.) Thus, the Court does not address Defendant's Article III standing argument that Defendant advanced in its Motion to Dismiss.

on the Sun-Maid Raisin packaging violates section 101.60(c)(2)(iv) because according to Plaintiff, other brands of raisins, which Sun-Maid Raisins resemble and for which Sun-Maid Raisins substitute, do not normally contain added sugar. (Compl. ¶ 3; Opp'n at 1.) Defendant contends that under the regulation, instead of comparing Sun-Maid Raisins to other brands of raisins to determine if the "No Sugar Added" label is appropriate, the correct category of food that Sun-Maid Raisins resemble and for which they substitute are other broader categories of similar food, like dried cranberries, for example, and that Plaintiff is interpreting the regulation too narrowly. (Mot. at 1–2, 6.)

The Court agrees with Plaintiff's reading of the regulation and finds that under title 21 C.F.R. section 101.60(c)(2)(iv), the food which Sun-Maid Raisins resemble and for which they substitute are other brands of raisins. This interpretation of the regulation complies with the plain language of the statute and is also in line with *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 325241, at *5 (N.D. Cal. Jan. 29, 2014), in which the court found that section 101.60(c)(2) calls for the comparison of a food with the challenged label to other brands of that same food, not different broader categories of food, for purposes of determining whether it is appropriate for a food product to be branded with the "No Sugar Added" label. In *Rahman*, the court held that a plaintiff sufficiently stated a claim based upon a violation of title 21 C.F.R. section 101.60(c)(2)(iv) when the plaintiff alleged that "defendant's apple juice does not resemble and substitute for food that normally contains added sugar because other brands of apple juice generally do not contain added sugar due to the substantial inherent sugar content of apple juice." 2014 WL 325241 at *5.[3] This interpretation of

---

[3] In *Rahman*, the court states that the plaintiff has "properly alleged a violation of section 101.60(c)(2)(v)" when it appears that the court intended to state that the plaintiff has "properly alleged a violation of section 101.60(c)(2)[(iv)]." 2014 WL 32541 at *5. This part of the court's discussion is titled with the heading, "21 C.F.R. § 101.60(c)(2)(iv)," and the analysis focuses on subsection (iv). *Id.* It makes sense that the court's discussion is focused on subsection (iv), as opposed to subsection (v), because subsection (iv) concerns the use of the "No Sugar Added" label, and

7.

section 101.60(c)(2)(iv) is also in line with *Wilson v. Odwalla, Inc.*, No. 17-2763 DSF (FFMx), 2017 WL 3084278, at *2 (C.D. Cal. June 28, 2017) (internal quotation marks omitted), in which the court rejected the defendants' argument that the correct category of food for comparison of 100% juice products is "noncarbonated drinks containing any amount of fruit juice."

    The Court agrees with the other courts that have interpreted title 21 C.F.R. section 101.60(c)(2)(iv) and have concluded that a product with the challenged "No Sugar Added" label should be compared to other brands of that same food for purposes of determining whether the "No Sugar Added" label is appropriate. This interpretation is supported by the plain language of the regulation, which is not ambiguous. As stated above, section 101.60(c)(2)(iv) (emphasis added) states that "[t]he terms 'no added sugar,' 'without added sugar,' or 'no sugar added' may be used only if: [t]he food that *it resembles and for which it substitutes* normally contains added sugar." Pursuant to title 21 C.F.R. section 101.13(d), "[a] 'substitute' food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'" 21 C.F.R. § 101.13(d). In their Motion to Dismiss, Defendant argues that raisins resemble and are a substitute for dried cranberries, which requires a finding that raisins are organoleptically similar to dried cranberries. (*See* Mot. at 1–2, 6; Opp'n at 10); 21 C.F.R. § 101.13(d). But as Plaintiff notes, if the Court were to consider the articles that Defendant relies upon to support its argument that dried cranberries are a substitute for raisins, the articles actually suggest the opposite, as one article notes, for example, that "for an unmatched taste, color and versatility no other dried fruit comes

---

subsection (v) concerns the "low calorie" or "calorie reduced" label, which is not the focus of the court's analysis in this section. *See* 21 C.F.R. §§ 101.60(c)(2)(iv)–(v). Additionally, the court includes another section in which it addresses violations based upon section 101.60(c)(2)(v). 2014 WL 32541 at *4–5.

close to Craisins [(dried cranberries)] – not even raisins." (*See* "Strabo Decl.", Ex. D.) Additionally, at this Motion to Dismiss stage, the Court does not find it appropriate to reach the conclusion—that raisins can be substitutes for other dried fruit, like dried cranberries—that Defendant seeks the Court to reach.

As discussed above, Defendant requests that the Court take judicial notice of a letter, dated August 31, 2017, from Dr. Balentine, Director of the Office of Nutrition and Food Labeling at the Center for Food Safety and Applied Nutrition at the FDA, to Maia Kats and Laura MacCleery at the Center for Science in the Public Interest. (Am. RJN at 3; Lahiff Decl., Ex. A.) This letter concerns "the labeling of juice with a 100% juice declaration and the nutrient content claim 'No Added Sugar.'" (Dkt. No. 20-1, Ex. A at 1.) In this letter, Dr. Balentine explains that "firms may make the 'No Added Sugar' nutrient content claim on certain products that bear the declaration '100% juice'" because "[p]roducts that bear a 100% juice declaration may contain other ingredients," as the "FDA's definition of 'juice' in 21 CFR 120.1(a) does not prohibit added ingredients such as sugar." (Dkt. No. 20-1, Ex. A at 1.)

Despite the fact that the issue in the letter is not directly on point with the issue here (it concerns the use of the "No Sugar Added" label in the context of products that *also* bear a 100% juice declaration), Defendant relies on two sentences from the two-page letter to support its reading of the regulation. (Lahiff Decl., Ex. A; *see also* Mot. at 7; Reply at 2–4.) Dr. Balentine states: "We note that this condition does not limit the 'No Added Sugar' claim to only very similar foods bearing the same name or the same juice content. For example, juices with no added sugar could substitute for juice with added sugar, fruit-flavored soft drinks sweetened with sugar, or other sugar-sweetened beverages." (*See* Dkt. No. 20-1, Ex. A at 2; Mot. at 2.) Defendant argues that based on this statement, the Court should interpret the regulation to mean that food products may only contain the "No Sugar Added" label if other broader categories of food that are similar to the food product with the challenged label normally contain sugar. The Court acknowledges this statement in the letter, but

9.

nonetheless concludes that Defendant's interpretation of the regulation is "inconsistent with the regulation[,]" which is not ambiguous, and as a result, this Court does not need to give deference to this two sentence statement in a letter from Dr. Balentine. *See Auer v. Robbins*, 519 U.S. 452, 461–62 (1997) (explaining that the court need not give deference to an agency's interpretation that is "plainly erroneous *or* inconsistent with the regulation") (emphasis added); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (explaining that *Auer* deference is only appropriate where the regulation is ambiguous); (*see also* Reply at 2 n.4 (stating that "*if* the Court finds the language in the regulation is ambiguous, *Auer* deference would apply") (emphasis added)).

In conclusion, Plaintiff sufficiently pleads a violation of title 21 C.F.R. section 101.60(c)(2)(iv) to support his claims because Plaintiff alleges that Sun-Maid Raisins are marked with a "No Sugar Added" label, and other brands of raisins, which Sun-Maid Raisins resemble and for which Sun-Maid Raisins substitute, do not normally contain added sugars. (*See* Compl. ¶¶ 21–30.)

### B. Whether the Action Should be Dismissed or Stayed under the Primary Jurisdiction Doctrine.

Defendant argues that if the Court concludes that section 101.60(c)(2)(iv) is ambiguous, the Court should dismiss this action or stay the proceedings under the primary jurisdiction doctrine. (Mot. at 9.) "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* "Primary jurisdiction applies in a limited set of circumstances." *Id.* "[T]he doctrine is not designed to 'secure expert advice' from agencies 'every

time a court is presented with an issue conceivably within the agency's ambit.'" *Id.* (quoting *Brown v. MNCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). The doctrine "is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Id.* Because many other courts have addressed the interpretation of title 21 C.F.R. section 101.60(c)(2)(iv), the Court does not find that the issue here is "an issue of first impression, or a particularly complicated issue that Congress has committed to a regulatory agency," such that it is appropriate for this Court to apply the doctrine of primary jurisdiction in this instance. *See e.g.*, *Rahman*, 2014 WL 325241, at *5 (interpreting § 101.60(c)(2)(iv)); *Wilson*, 2017 WL 3084278, at *2 (same). Therefore, the Court declines to dismiss Plaintiff's Complaint or stay the proceedings under the doctrine of primary jurisdiction.

### C. Whether Plaintiff Has Satisfied Rule 9(b) for Purposes of Pleading His UCL, FAL, CLRA, Fraud, and Misrepresentation Claims.

Defendant also argues that Plaintiff's UCL, FAL, CLRA, fraud, and misrepresentation claims should be dismissed because Plaintiff fails to comply with the heightened pleading standards under Rule 9(b). (Mot. at 11–12.) Rule 9(b)'s heightened pleading requirements apply to UCL, FAL, and CLRA claims that are grounded in fraud, common law fraud claims, and misrepresentation claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122–23 (C.D. Cal. 2010); *Puri v. Khalsa*, 674 F. App'x 679, 687–89 (9th Cir. 2017). "Under Rule 9(b), a plaintiff 'must state with particularity the circumstances constituting fraud.'" *Puri*, 674 F. App'x at 687. "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false. *Id.*

11.

Plaintiff has satisfied Rule 9(b)'s pleading requirements here because in the Complaint, Plaintiff details the "'who, what, when, where, and how' of the misconduct charged." *See Vess*, 317 F.3d at 1106. Plaintiff identifies the "who" as Defendant Sun-Maid Growers of California as the entity responsible for the manufacturing and sale of Sun-Maid Raisins, and the "what" as Defendant's use of the "No Sugar Added" label on Sun-Maid Raisins, which Plaintiff relied upon when deciding to purchase Sun-Maid Raisins over other raisin brands that did not have the "No Sugar Added" label, satisfying the "how" requirement. (*See* Compl. ¶¶ 12, 20–21, 31–32.) As to the "when" and "where," Plaintiff alleges that he purchased Sun-Maid Raisins "many times" in 2016 and 2017, "from stores in Los Angeles, California, including Ralph's and Target." (Compl. ¶ 11.)

In its Reply brief, Defendant raises a safe harbor argument for the first time, arguing that Defendant's "compliance with 21 C.F.R. § 101.60(c)(2)(iv) provides a safe harbor to any attempt by Plaintiff to maintain this action on a broader, more generalized theory that the 'No Sugar Added' statement is generally misleading." (Reply at 11–12.)[4] Because the Court finds that Plaintiff has sufficiently pled a violation of 21 C.F.R. § 101.60(c)(2)(iv) as a basis for his claims, the Court rejects Defendant's safe harbor argument.

### D. Whether Plaintiff's Quasi-Contract/Unjust Enrichment/Restitution Claim Fails.

Lastly, citing *Trazo v. Nestle USA, Inc.*, No. 12-CV-2272 PSG, 2013 WL 4083218, at *11 (N.D. Cal. Aug. 9, 2013), Defendant argues that Plaintiff's claim for Quasi Contract/Unjust Enrichment/Restitution should be dismissed because it is "merely duplicative of statutory or tort claims." (Mot. at 14–15.) Notably, in light of the Ninth Circuit's holding in *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th

---

[4] The Court **DENIES** Plaintiff's Motion to Strike, as "district court[s] ha[ve] discretion to consider [a new] issue even if it was raised in a reply brief." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2001).

Cir. 2015), the *Trazo* court granted its Motion for Reconsideration of the *Trazo* Order upon which Defendant relies, stating that "[b]ecause the Ninth Circuit recently decided that the duplicative nature of an unjust enrichment/quasi-contract claim is not a valid reason to dismiss it, the court GRANTS Trazo's motion [for reconsideration]." *See Trazo v. Nestle USA, Inc.*, 113 F. Supp. 3d 1047, 1048 (N.D. Cal. July 10, 2016). Because the Ninth Circuit in *Astiana* rejected the same argument that Defendant now advances—that Plaintiff's quasi-contract/unjust enrichment/restitution claim fails because it is duplicative of statutory or tort claims—the Court rejects Defendant's argument here, and denies Defendant's Motion to Dismiss as to Plaintiff's claim for quasi-contract/unjust enrichment/restitution. *See* 783 F.3d at 762–63.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss or Stay and Plaintiff's Motion to Strike.

**IT IS SO ORDERED.**

Dated: December 14, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE